ROBERT S. BREWER JR.
United States Attorney
ERIC G. ROSCOE, Assistant U.S. Attorney
District of Columbia Bar No. 1006245
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9722
Facsimile: (619) 546-0510
Eric.Roscoe@usdoj.gov

JAMIE B. PERRY, Trial Attorney
Maryland Bar No. 1012160031
Criminal Division, U.S. Department of Justice
Human Rights and Special Prosecutions Section
1301 New York Avenue, Northwest
Washington, D.C. 20530
Telephone: (202) 307-3262
Jamie.Perry@usdoj.gov

APRIL RUSSO, Assistant U.S. Attorney
Pennsylvania Bar No. 313475
555 Fourth Street, Northwest
Washington, D.C. 20530
Telephone: (202) 252-1717
April.Russo@usdoj.gov
Attorneys for the United States

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NUMBER: 20-MJ-4452-LL |
| v. | UNITED STATES' MOTION FOR PRE-TRIAL DETENTION |
| BRIAN JEFFREY RAYMOND, Defendant. | |

The UNITED STATES OF AMERICA, by and through its counsel, ROBERT S. BREWER, JR., United States Attorney, Eric G. Roscoe and April Russo, Assistant United States Attorneys, and Jamie B. Perry, Trial Attorney, U.S. Department of Justice, hereby moves to detain

1

defendant, Brian Jeffrey Raymond, pending trial. In support thereof, the United States states the following:

## INTRODUCTION

The United States respectfully moves this Court to order the pre-trial detention of the defendant pursuant to 18 U.S.C. § 3142(f)(1) and (2). The defendant is charged in a criminal complaint with one count of coercion and enticement, in violation of 18 U.S.C. § 2422(a), and the government proffers information herein indicating that additional charges are anticipated. Based upon the nature and circumstances of the offense, the weight of the evidence, the defendant's conduct, both recently and over the course of several years, the defendant's history living overseas, his lack of family ties in the district where he is being prosecuted, and his continuing risk to women in the community, there are no combination of conditions that will reasonably assure the appearance of the defendant or ensure the safety of the community.

## FACTUAL BACKGROUND

1. **Initial Investigation Involving Adult Victim 1**

On May 31, 2020, police in Mexico City, Mexico responded to the defendant's apartment in response to reports of a naked, hysterical woman desperately screaming for help from the defendant's balcony. At the time, the defendant was working for a U.S. Government agency at the U.S. Embassy in Mexico and had been living in his embassy-leased residence since August 2018. Because the U.S. government has jurisdiction over certain crimes occurring in embassy-leased housing, pursuant to 18 U.S.C. § 7(9), the Department of State, Diplomatic Security Service ("DSS") and the Federal Bureau of Investigation ("FBI") are jointly investigating the incident.

Mexican authorities responded to the scene, and Adult Victim 1 ("AV-1") was escorted to an ambulance and transported offsite for immediate medical treatment and forensic examination by local medical providers. DSS personnel from the embassy also responded to the defendant's

2

residence and observed AV-1 outside, noting that she was physically unstable and required assistance to walk, appeared heavily intoxicated, and was later observed crying in the back of an ambulance.

AV-1 was interviewed and stated that she met the defendant on Tinder, a dating application. Early in their conversations on the application, the defendant brought up the topic of alcohol, to which AV-1 responded that she enjoyed drinking wine. After communicating with the defendant via Tinder and a mobile messaging application called WhatsApp, they met at an outdoor shopping center on May 31, 2020. AV-1 reported that the defendant brought a backpack containing a bottle of wine and coffee mugs, and he filled and subsequently refilled a coffee mug with wine for AV-1. They drank and talked in the outdoor shopping area and eventually decided to continue their date at the defendant's apartment.

AV-1 was able to describe her public outing with the defendant and his apartment interior in detail. However, AV-1 reported that after eating the light snacks and drinking from a wine glass the defendant provided in his residence, she suddenly blacked out. AV-1 said she had no memory of any physical contact with the defendant or screaming for help on the defendant's balcony. In fact, AV-1 reported that she was unaware of any sexual contact with the defendant until she was examined by Mexican medical professionals who advised her that she had injuries consistent with vaginal and anal penetration.

Approximately two weeks after the incident, AV-1 obtained from Mexican law enforcement copies of the medical records detailing the results of the sexual assault examination conducted by local medical providers immediately following the incident. The records note the presence of several injuries including a vaginal injury consistent with friction, an anal laceration compatible with the introduction of a hard object with blunt edges, generalized redness throughout

her perianal area, bruises on her forearm, elbow, and knee, and a laceration on the inside of her cheek.

Following the incident at his residence in Mexico, the defendant was returned to the United States on June 1, 2020, where he quarantined for two weeks in Northern Virginia. The defendant voluntarily consented to two interviews with law enforcement. He admitted to having sexual intercourse with AV-1, but claimed it was consensual. On the date of the first interview, June 2, 2020, the defendant showed agents his phone screen, and the agent noted that Bumble, a dating application, was installed on this phone, along with Tinder. The second interview occurred on June 6, 2020, during which agents seized the defendant's personal and work phones pursuant to a search warrant issued out of the Eastern District of Virginia. As discussed below, analysis of the defendant's phones is ongoing. Of particular note, the Bumble application had been deleted from the defendant's phone at the time of its seizure, and an analysis of his phone indicated that on June 3, 2020, after his first interview with law enforcement, the defendant conducted the following internet search: "how to save photis from.icloud to aniother device [sic]."

2. **Ongoing Investigation – Adult Victims 2 Through 22 (AV-2 through AV-22)**

Forensic analysis of the defendant's personal phone revealed approximately 25 video fragments of naked, unconscious women. The fragments were found in the phone's deleted space. A search warrant for the defendant's iCloud account was issued, and a review of his iCloud backup revealed approximately 400 photos and videos[1] relevant to the investigation. According to the associated metadata, the vast majority of the video recordings and photographs were created on the defendant's seized phone or on one of his prior phones that also were linked to his iCloud

---

[1] A representative sample video, depicting AV-5, was submitted to this Court under seal on Tuesday, October 13, 2020. The government will make available to this Court a limited number of representative photographs at the detention hearing. These materials have been reviewed by defense counsel.

account.  Similar photographs were found on a laptop computer seized from the defendant's Mexico City residence, pursuant to a search warrant issued by the District of Columbia.  The photographs and videos date back to at least 2011, with the most recent videos and photographs dated May 30, 2020, the night before the incident with AV-1.  Based upon metadata from the videos and photographs, as well as bedding and furniture seen in the videos and photographs, at least nine of the apparent victims appear to have been recorded in the defendant's embassy-leased residence in Mexico City.  Several others were taken in the Washington, D.C. metro area in or around 2015-2017.

      The videos and photographs show at least 21 different unconscious women, all appearing to be adults.  Some of the women in the videos and photographs are fully nude.  Other videos show women partially dressed; a fragment shows a man's hand pulling down a woman's bra to expose her breast; and there are several fragments of a man's hand touching breasts.  The women are all unconscious and some can be heard snoring.  In some of the videos and photographs, a man's thumb can be seen lifting the eyelids of the women and holding them open.  The women's eyeballs do not move, and the women do not flinch, move, or respond in any way.  In several of the videos, a man's hand, appearing to be the defendant's, can be seen opening the mouths of the women and inserting his fingers. The women do not move or respond in any way.  In some of the videos, a man's hand can be seen lifting and waving the limp arms and legs of the women, and they do not move or respond in any way.  The videos depict different focal points, to include the faces, breasts, and genitals of women.  In multiple photographs and videos, an erect penis can be seen on the edge of the screen or frame.  In at least one video, a nude male (who appears to be Raymond) can be seen lying in bed with AV-9's naked, unconscious body, with her limp legs dragged over his and his penis erect.  In one photograph, taken on May 30, 2020 of AV-7, a nude male can be seen straddling a fully nude, unconscious woman with his erect penis pointing in the direction of her

5

nude genitals.[2]  Interviews of the victims appearing in the photographs and videos are ongoing. Those interviewed to date were unaware that the defendant had undressed and recorded them and indicated that they did not consent to such activity.

In addition to the above-described videos and images, internet artifacts on Raymond's phones revealed a number of relevant searches.  For example, there were searches for "passed out black girl," on February 8, 2020, for "passed out gorl," on February 22, 2020, and for "deep sleep" on February 23, 2020.  There were multiple videos of unconscious or "passed out" women in his YouTube viewing history.  Moreover, between 2010 and 2011, law enforcement discovered a number of internet artifacts on one of Raymond's laptops revealing searches for: "passed out," "Ambien," "Ambien and alcohol side effects, Zolpidem Tartrate tablets and 10mg," "Ambien," "dissolve," "Zolpidem and pharmacies," "Ambien and alcohol and pass out," "passed out and carried," and "deep sleep."

### 3. Adult Victim 4 and Conduct Alleged in the Criminal Complaint

Of the approximately 400 photographs and videos recovered from the defendant's devices and iCloud account, two videos and eight photographs of AV-4 were found in the defendant's iCloud account.  Fragments of the two videos of AV-4 were found in the deleted space on the defendant's personal phone.  The data shows that the videos and photographs were taken on May 14, 2017.  In the videos and photographs, AV-4 is lying down on her back on a bed.  Her eyes are closed, and she appears unconscious.  She is depicted in several photographs with her shirt pulled up and her bra pulled down so that both breasts are visible.  In one photograph, her bra is on, but her shirt is pulled up, and in one photograph, a male's thumb can be seen holding her eyelid open.

---

[2] During his interviews, the defendant admitted to having sexual intercourse with a woman in his residence on the night of May 30, 2020, the same night on which 77 photographs and four videos were taken of an unconscious AV-7 on the defendant's phone.

In one video, a male hand can be seen briefly pulling down her shorts to reveal her upper pubic region. Large red marks can be seen on both of her knees in several photographs.

An iMessage chat conversation between the defendant and AV-4 was also recovered. In a conversation on April 18, 2017, the defendant asked AV-4 if she lived in "DC or VA." She confirmed that she lived in Virginia, and he said that he did too. After their first date in Virginia, the defendant suggested they meet at a park in Washington, D.C., which they did on May 14, 2017. The following morning, on May 15, the defendant messaged AV-4, saying, "hopefully you aren't too hung over today." She responded, "Hey! Yesterday was rough. I had a massive hangover… lol. I had fun too! We have to do it again." The two continued to converse for a while after this, with both of them suggesting another meeting, but the messages do not reveal that any other meeting actually took place.

A preliminary interview of AV-4 was conducted on September 22, 2020, after which AV-4 was shown the video and photographs described above. The full interview then took place on September 25, 2020. During the interviews, AV-4 explained that she met the defendant on Tinder and after exchanging chat messages, they went on their first date at a restaurant in Virginia near both of their homes. Following their first date, the defendant suggested they meet at a park called Dumbarton Oaks in the Georgetown area of Washington, D.C. Based upon his invitation, AV-4 drove from Virginia to Washington, D.C. on May 14, 2017, where the defendant was waiting for her. AV-4 brought two "juice boxes" of Soju, a Korean liquor, for them to drink while they walked around the park. Later, they walked to a wine bar, where they ordered a glass or two of wine and continued to converse. AV-4 stated that the defendant seemed to know the menu very well, and she assumed he had taken women there before. While at the bar, the defendant expressed that he wanted to continue the date but immediately implied that his apartment was unavailable. Based upon the defendant's suggestion, AV-4 then offered her apartment in Virginia as an alternative.

7

The defendant and AV-4 left the wine bar and traveled separately back to AV-4's apartment in Virginia. The defendant followed AV-4 in his own vehicle and arrived immediately after her. They entered her apartment, took their shoes off by the door, and AV-4 opened a bottle of red wine and poured them both a glass. After showing the defendant around, they walked out onto her balcony with their glasses, leaving the bottle of wine inside. At some point, the defendant went to the restroom and returned to the balcony with the open bottle of wine, where he refilled both of their glasses. AV-4 drank from the refilled glass, and shortly thereafter she became "woozy," her legs gave out from underneath her, and she dropped to her knees while on the balcony. AV-4 last remembers telling the defendant that she was not feeling well and needed to lie down.

AV-4 next remembers awaking in her bed, fully clothed, with the defendant lying next to her. AV-4 stated that the defendant seemed surprised that she woke up. She told him that if he had too much to drink, he could stay on her living room couch. The defendant declined and said he was fine. He then walked to the door, put on his shoes, and left the apartment. AV-4 took notice that he easily put on his shoes and felt that did not appear to be intoxicated, while she continued to have trouble standing on her weak legs at that point.

AV-4 stated that she had never "blacked-out" from drinking alcohol before that night, and she has not done so since. AV-4 said that, to her knowledge, she and the defendant were not physically intimate. AV-4 stated that she was unaware that the defendant removed her clothing to expose her breasts and she was unaware that the defendant took photographs and videos of her. AV-4 further stated that she did consent to the defendant manipulating her clothing, video recording her, or taking photographs of her.

4.     **Defendant's Conduct from June to October 2020**

Following his interviews with federal law enforcement in early June 2020, the defendant knew he was the subject of a criminal investigation involving the May 31, 2020 incident at his

8

Mexico City residence. Nevertheless, he continued meeting women on dating applications, following a strikingly similar pattern. Law enforcement obtained and executed a search warrant on Raymond's Tinder account in late August. The return from the search warrant revealed that, in early July 2020, the defendant resumed using Tinder on his new phone. Moreover, throughout July and August 2020, the defendant conversed with numerous women on Tinder. He proposed meeting several of them, often in public parks as he did with AV-1. In one recent Tinder conversation, he told a woman that he had also matched with her on Bumble, indicating that he was active on that dating application as well. In the week before his arrest, he spent the night with a woman he met on Hinge, yet another dating application. This woman was interviewed by law enforcement and indicated that she believes she had sex with the defendant at least three times, but she only has small fragments of memory of the encounters.

## APPLICABLE LEGAL STANDARD

Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence. A crime of violence is defined to include any felony under Chapter 117. 18 U.S.C. § 3156(a)(4)(C). Thus, it includes 18 U.S.C. § 2422(a), which falls under Chapter 117.

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). In considering whether detention is appropriate, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

9

**ARGUMENT**

1. **Nature and Circumstances of Offense Charged**

The nature and circumstances of the offense warrant detention. The defendant sexually assaulted AV-4 while she was unconscious, moving her bra so he could film her naked breasts and moving her shorts so he could capture her upper pubic region. He did so knowing that she was unresponsive, even photographing himself moving her eyelids back. And, AV-4 was one of at least 22 different women that Raymond photographed and videotaped over the course of at least nine years.

Moreover, in committing this crime, the defendant appeared to be a perfect gentleman towards AV-4, such that she had no knowledge of the crime he committed when he filmed her naked, unconscious body. He gained AV-4's trust over the course of two dates and had her travel back to a private location where he could commit his crime. He either rendered her unconscious or took advantage of her unconscious state to undress and record her body without her knowledge or consent. He placed himself in a position of complete power and control over his completely helpless victim. Worse still, it appears that the defendant's conduct has only escalated and become more violent since his sexual assault of AV-4. AV-1 was physically injured, and the evidence shows that the defendant had both anal and vaginal intercourse with her when she was not fully cognizant of what he was doing.

Additionally, it appears that the defendant engaged in potentially obstructive behavior following his June 2, 2020 interview with law enforcement. For example, he conducted an internet search the following day, indicating that he intended to remove photographs from his iCloud and store them on a different device. He also appears to have deleted relevant photographs and videos from his phone, including videos of AV-4, as fragments were located in the deleted space on his personal phone.

10

The nature of the defendant's criminal conduct against AV-4 and others, the sheer number of apparent victims, the length of time the defendant has been engaged in this behavior, and his attempts to dispose of relevant evidence all reflect the seriousness of the offenses charged and weigh strongly in favor of detention in this case.

2. **Weight of the Evidence**

While the weight of the evidence is the least important factor, the weight of evidence against the defendant is strong and weighs in favor of detention. Evidence shows that the defendant and AV-4 traveled to Washington, D.C. for a date at his suggestion and then traveled back to Virginia. AV-4 indicated that she "blacked out" at her apartment shortly after the defendant refilled her wine glass and that she did not give the defendant consent to undress her, photograph her, or record her. The photographs and videos recovered from the defendant's iCloud account show AV-4's partially nude body, and she has reported that she was previously unaware that the defendant took and retained such photos.

Importantly, the government has recovered evidence of the defendant's other similar crimes evidencing his intent, all of which followed a similar pattern and led to a similar outcome, in which the defendant undressed, photographed, and recorded each of his unconscious, helpless victims. The defendant's phones and laptops contained evidence of the full scope of his crimes, including internet artifacts revealing just how well-orchestrated his criminal activity was and YouTube video viewing history showing his motivation and interest. Over 400 videos and photographs of 21 different women taken over the course of at least nine years were recorded by the defendant. And, on May 31, 2020, the defendant was caught in the act – police responded to AV-1's desperate cries for help from the defendant's balcony, of which she has no memory. Moreover, videos and photographs of AV-7 from May 30, 2020, also taken at the defendant's apartment, show similar activity. Along with the video recordings, photographs, search history,

11

the rescue of AV-1, and the interviews of AV-4, the Government also has recovered dozens of chat conversations between the defendant and other women that are corroborative of his criminal activity from his devices and from his Tinder and iCloud accounts.

### 3. History and Characteristics of the Defendant

#### A. Employment and Physical Health

From August 2018 until June 1, 2020, the defendant worked for a U.S. Government agency at the U.S. Embassy in Mexico City. There, he used his embassy-leased residence to engage in criminal sexual conduct, to include an alleged sexual assault of AV-1 on May 31, 2020 and the undressing, photographing, and recording of at least nine unconscious women. During the course of his employment with the U.S. Government, the defendant has lived in approximately six to seven different countries, and he has traveled to more than 60 countries for work and personal travel. To the government's knowledge, the defendant is currently unemployed.

The defendant argues that he should be released due to his COVID risk, given his heart valve repair in 2018. But, the defendant's conduct from March 2020 until the date of his arrest suggests no such concern for contracting COVID. For example, the photos and videos recovered from his iCloud show the defendant in close contact with at least four different women at his residence for several hours. There are photographs and videos of three unconscious women in his bed, two in late-March 2020 and one on May 30, 2020, at the height of the COVID crisis. Additionally, he met AV-1 for the first time on May 31, 2020 after communicating with her via Tinder, invited her into his home, and admitted to having sexual intercourse with her. From July until the date of his arrest, the defendant was active on at least three dating applications on which he proposed in-person meetings to numerous women, and he had sexual intercourse with at least one of them in her home. Additionally, the defendant has visited his indoor gym on a regular basis while living with his parents. Using his recent conduct as a guide, the defendant has not exhibited

12

any behaviors to indicate a present fear of, or concern about, contracting COVID. And, if his past behavior is any indicator, the defendant may be more at-risk outside of prison than he is inside it.

### B. Family Ties

The defendant's motion for bond claims that he has close and continuing ties to his family in the San Diego area. Putting aside the fact that he has not claimed to have close ties in the District of Columbia, which is the relevant district here, this assertion is demonstrably false. Following the defendant's arrest, federal law enforcement agents interviewed his mother and father, with whom he has been living since mid-June 2020. His parents indicated that they were surprised he came to visit, as such visits are rare. In fact, the defendant never informed them he resigned from his U.S. government position – he told them he was awaiting his next assignment. His parents stated that they feel like they do not know their son, as his contact with them is infrequent and sporadic. For example, his parents recalled an entire year when he contacted them by phone only once. When asked about his health, his parents had no idea about his heart valve issue replacement. When asked about his prior relationships, his parents had no idea the defendant had been married and divorced. They stated that they are not aware of any friends in the area.

While living with them for the past few months, his parents indicated that he remains in his room when he is home, and when they do see him, he is always on his laptop or phone. He occasionally watched or played tennis with his father, but that was the extent of their interactions. The defendant's sister and her children are often at the parents' home, but they stated the defendant rarely interacted with them and showed no interest in his nieces and nephews. There were no indications during the interview that he has been assisting in the care of his mother in any way. Notably, several years ago, the defendant took several months of leave without pay, purportedly to care for his ailing mother. In reality, he visited approximately 15 different countries on leisure travel during that time.

### C. Past Conduct

As already discussed, the defendant's pattern of past conduct, documented extensively in videos, photographs, and text messages is chillingly consistent and of grave concern. For years, he has exerted power and control over unconscious women, undressing them, sexually assaulting them, photographing them, and recording them without their knowledge or consent. The defendant's serial conduct appears to be undeterred even by the fact that he knew he was under investigation, as he has continued meeting numerous women on at least three dating applications during the pendency of this investigation, with one witness indicating that she believes she has had intercourse with him but that she lacks a complete memory of those encounters.

### 4. Safety of the Community

The defendant is an experienced sexual predator who poses a substantial threat to women in the community. The government's investigation has revealed 22 apparent victims thus far – the initial sexual assault victim plus 21 additional victims found on his devices and in his iCloud. The defendant's conduct, in which he undresses, photographs, and records unconscious women, dates back at least to 2011. Moreover, given the initial medical findings with respect to AV-1, the defendant also vaginally and anally penetrates at least some of his victims and engages in this criminal activity without regard to any injuries he may cause. His internet searches for things like "Ambien," "dissolve," and "Ambien and alcohol and pass out" are alarming. Moreover, the government believes there are likely additional victims, as there are numerous chats between the defendant and other women, from whom photos or videos have not been recovered, in which the women appear to be asking the defendant what happened, apologizing for blacking out, asking if they had sex, and indicating that they had no memory of their night with the defendant.

The defendant's conduct appears to be escalating. The early photographs are limited in number, and some of the women appear partially dressed, as did AV-4. Recent photographs and

14

videos have increased in number, with 15 videos and 20 photographs of AV-9 in March 2020 and 77 photographs and four videos of AV-7 in May 2020. The defendant's interaction with these victims' unconscious bodies seems to have changed over time as well, with increased manipulation of their limbs and body parts as well as posing their bodies in numerous different positions. His more recent photos and videos also feature more of him, with his erect penis visible in several photos and videos, his naked body straddling an unconscious, naked AV-7 (a woman with whom he admitted having intercourse on the same night the photos and videos were taken), and his nude body lying with AV-9's naked, limp body, draping her legs over his own. Finally, the defendant admitted to having sexual intercourse with AV-1, while AV-1 has no memory of any physical contact with the defendant and was rescued from his balcony where she was seen naked and screaming for help.

Notably, this pattern has continued undeterred during the known investigation into his behavior, as evidenced by his Tinder conversations in July and August, and his continued efforts to meet women via three different dating applications. Just a week prior to his arrest, the defendant had sexual intercourse with one such woman he met on Hinge who indicated that they consumed several drinks together, and that she does not have a complete memory of their encounter.

The defendant's conduct dates back numerous years. It follows a consistent, reliable pattern. It has escalated in the past two years. His proclivity to engage in this criminal behavior is so strong that neither the fact of his Government position nor his knowledge that he was under criminal investigation were enough to deter him from continuing. There is no combination of conditions that could ensure the safety of the community if the defendant were to be released.

### 5. Risk of Flight

The defendant also poses a significant risk of flight. The defendant is extremely comfortable living, working and traveling overseas, to an extent that few others could relate.

Indeed, he has lived and worked in multiple foreign countries across the globe. He speaks Spanish and Mandarin Chinese. He has worked in or visited over 60 different countries in all regions of the world. He is currently unemployed and lacks any ties to the District of Columbia. The defendant is now aware that the government's investigation revealed the full scope and duration of his conduct, far beyond its initial investigation into the sexual assault of a single victim. He is now on notice that additional charges are anticipated that will subject him to a significant sentence of incarceration. Each of these factors make it highly likely that the defendant will attempt to flee if released.

**WHEREFORE**, for the foregoing reasons, the government submits there are no combination of conditions that will reasonably assure the appearance of the defendant or ensure the safety of the community. Accordingly, the government respectfully requests that the defendant be detained pending trial.

DATED: October 15, 2020                Respectfully submitted

                                       ROBERT S. BREWER JR.
                                       United States Attorney


                                       /s/ *Eric G. Roscoe*
                                       ERIC G. ROSCOE
                                       Assistant United States Attorney

*/s/JAMIE PERRY*                       */s/April Russo*
Jamie Perry, Trial Attorney            April Russo
U.S. Department of Justice             Assistant United States Attorney
Criminal Division                      District of Columbia

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN JEFFREY RAYMOND,<br><br>Defendant. | Case No.: 20-MJ-4452-LL<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and am not a party to the above-entitled action; that I served the following document: *UNITED STATES' MOTION FOR PRE-TRIAL DETENTION*, in the following manner: by electronically filing with the U.S. District Court for the Southern District of California using its ECF System.

DATED: October 15, 2020

/s/ *Eric G. Roscoe*
ERIC G. ROSCOE
Assistant United States Attorney